IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **YATANA M. WALKER** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Case No. RWT 08-3065 |
| | * | |
| **DONNA GAMBRELL, et al.** | * | |
| | * | |
| Defendants | * | |

**MEMORANDUM OPINION**

On August 28, 2008, Plaintiff Yatana Walker filed this action *pro se* in the District Court of Maryland for Prince George's County against Defendants Donna Gambrell and then Secretary Henry Paulson, both of the United States Department of the Treasury ("Treasury"). Defendants removed the action to this court on November 13, 2008. Plaintiff alleges that Defendants violated the Privacy Act of 1974 ("Act") and the Family and Medical Leave Act ("FMLA"), improperly disclosed information related to her medical condition and sick leave, and invaded her privacy when Ms. Gambrell, Plaintiff's supervisor, disclosed Plaintiff's medical condition to Plaintiff's co-workers. Plaintiff now seeks $5,000 in damages.

Defendants moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Plaintiff subsequently filed a response. For the reasons outlined below, Defendants' motion will be granted.

**I. Background**

1

Plaintiff is the Chief Financial Officer of the Community Development Financial Institution Fund ("CDFI"), an office within the Treasury, and Defendant Donna Gambrell is her supervisor. [Def.'s Mot. to Dismiss 2-3]. On the morning of April 16, 2008, Plaintiff, who was pregnant at the time [Compl. 2-3], notified Ms. Gambrell and Nancy Pollack, Ms. Gambrell's Staff Assistant, by email that she would not be able to come into work that day due to a doctor's appointment. [Compl. Ex. B]. At 3:35 p.m. that same day, Plaintiff's husband called Ayisa Crowe, one of Plaintiff's subordinates, informing her that the Plaintiff was in the hospital and "losing her baby" (i.e., having a miscarriage). [Compl. 2]. He asked Ms. Crowe to convey this to Ms. Gambrell and Ms. Pollack. *Id.* Plaintiff's husband called Ms. Crowe rather than Gambrell directly because he did not have Ms. Gambrell's number with him at the hospital. *Id.* At 3:40 p.m., Ms. Crowe informed Ms. Pollock of Plaintiff's miscarriage and five minutes later, as Ms. Crowe was leaving for the day, she ran into Ms. Gambrell at the elevator where they "had an encounter." *Id.* Ms. Gambrell elaborated on the interaction further in her declaration stating that "Ms. Crowe was crying hysterically. I understood that she was upset after hearing the news . . . . It was clear to me that other employees on the floor had likely heard Ms. Crowe crying." [Defs.' Mot. to Dismiss Ex. 1 ¶¶ 7-8]. Following her exchange with Ms. Crowe, Ms. Gambrell gathered all 8th floor staff and contractors into a conference room to inform them that Plaintiff had miscarried.[1] [Compl. 2]. At 4:32 p.m., Ms. Gambrell sent an email to all CDFI employees, contractors, and temporary employees informing them of the same and at 5:12 p.m., sent an email to Plaintiff's staff referring them to the Treasury's counselor [Compl. Ex. B & C].

---

[1]Defendants allege this meeting included seven to eight individuals on the Plaintiff's staff. [Def.'s Mot. to Dismiss ¶ 7].

On April 20, 2008, Plaintiff sent an email to Ms. Gambrell notifying her that she had been released from the hospital and would return to work after receiving permission from her physician. [Compl. Ex. D]. Ms. Gambrell replied that Plaintiff could take as long as she needed before returning to work. *Id.* On June 3, 2008, Plaintiff provided Ms. Gambrell with a copy of the FMLA form completed by her physician on May 5, 2008, which certified that she would need six weeks of convalescent leave due to the miscarriage. [Compl. Ex. E].

Plaintiff had filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Ms. Gambrell prior to this event. [Pl's. Resp. 4]. Plaintiff specifies neither the date on which the EEOC charge was filed nor its contents except to claim generally that Ms. Gambrell had made "a hostile working environment" for her. [Compl. 3]. Plaintiff further contends that the disclosures were "another form of retaliation" against her. *Id.*

Defendants, by contrast, claim that the disclosures were made to explain to affected staff members the reason for Ms. Crowe's disruption, enabling them to continue performing their duties given that the office was "small and somewhat close-knit." [Defs.' Mot. to Dismiss ¶ 7]. Ms. Gambrell, however, did not mention this reasoning during the course of the meeting with CDFI staff and instead commenced by informing them of the Plaintiff's miscarriage. [Pl's. Resp. 2]. Plaintiff claims that the staff called into the meeting were unaware of the disruption caused by Ms. Crowe. *Id.* She further contends that many CDFI employees were not aware that she was pregnant prior to Ms. Gambrell's disclosures and that her staff were confused and offended by Ms. Gambrell's handling of the situation. [Compl. 3]. Ms. Gambrell claims that she was unaware that the Plaintiff was upset by the disclosures prior to the filing of the Complaint [Defs.' Mot. to Dismiss 5]; however, Plaintiff refused to accept flowers sent by CDFI following the disclosures, and in April

3

2008, Plaintiff contacted the Privacy Act Office within the Treasury to prompt an investigation into Ms. Gambrell's disclosures. [Pl.'s Resp. 3].

In May 2008, Plaintiff contacted the EEOC in order to amend her pending charge to reflect Ms. Gambrell's disclosures and Ms. Gambrell was accordingly contacted by an EEOC investigator regarding the incident. [*Id.* at 4]. Plaintiff claims without specificity that she has suffered $5,000 in damages as a result of the disclosures. [Compl. 1].

## II. Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007), the Supreme Court declared the "retirement" of the long-cited "no set of facts" standard first announced in *Conley v. Gibson*, 355 U.S. 41 (1957).[2] The Court in *Twombly* looked instead to whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Id.* at 545. In sum, "factual allegations must be enough to raise a right to relief above a speculative level." *Id.*

The Court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir.

---

[2] *Conley* stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."

4

2005). Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002). If "matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(d).

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added).

5

## III. Analysis

**A. Privacy Act Claim**

Plaintiff first claims that the disclosure of her medical condition violated the Privacy Act of 1974 ("Act"). [Compl. 1]. As an initial matter, civil actions under the Act are properly commenced only against agencies, not individuals. *See* 5 U.S.C. § 552a(g)(1) (2006); *McLeod v. Dep't of Veterans Affairs*, No. 01-16909, 2002 WL 1759713, at *1 (9th Cir. July 29, 2002); *Wren v. Harris*, 675 F.2d 1144, 1148 n.8 (10th Cir. 1982)*; Kotmair v. I.R.S*, No. J-79-1784, 1981 WL 1750, at *3 (D. Md. Feb. 10, 1981). In certain cases it can be proper to name the head of the agency as a defendant where he is sued, for example, in his official capacity as custodian of the records; however, it is never proper to name subordinate employees. *See Rowe v. State of Tenn.*, 431 F. Supp. 1257, 1263 (E.D. Tenn 1977), *vacated on other grounds*, 609 F.2d 259 (6th Cir. 1979). Accordingly, the Privacy Act claim against Ms. Gambrell must be dismissed. However, because the pleadings of *pro se* plaintiffs are to be construed liberally, *see De'Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir. 2003), this Court will construe Plaintiff's suit against former Secretary Paulson as a suit against the Department of the Treasury.

To have a cause of action under the Act, the Plaintiff must show that the disclosures (1) violated the Act; (2) were committed willfully or intentionally; and (3) adversely affected her. *See* 5 U.S.C. § 552a(g)(1)(D), (g)(4); *Doe v. Chao*, 435 F.3d 492, 500 (4th Cir. 2006). Plaintiff has clearly failed to meet the first two elements, and therefore her claim fails.[3]

---

[3]Plaintiff arguably might be able to demonstrate that she suffered adverse effects as a result of Defendant's acts given the emotional trauma that disclosure of such sensitive information to so many individuals – many of whom were not even aware that the Plaintiff was pregnant – would

To prove the first element – that the disclosure violated the Act – the Plaintiff must show that the information disclosed is a "record" contained within a "system of records." 5 U.S.C. § 552a(b); *see Jafari v. Dep't of the Navy*, 728 F.2d 247, 249 (4th Cir. 1984). The Act broadly defines "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including . . . medical history . . . and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(4). Although courts are generally lenient in determining what constitutes a record, *see Williams v. Dep't of Veterans Affairs*, 104 F.3d 670, 673-74 (4th Cir. 1997), information acquired through voluntary verbal communication, prior knowledge, or observation does not constitute a record, and therefore its disclosure does not violate the Act. *See Doe v. Dep't of Veterans Affairs*, 519 F.3d 456, 461-63 (8th Cir. 2008) (finding that plaintiff could not recover for doctor's disclosure of plaintiff's medical information under the Privacy Act because the doctor learned of the information through a conversation with the plaintiff); *Thomas v. U.S. Dep't of Energy*, 719 F.2d 342, 345 (10th Cir. 1983)*; Olberding v. U.S. Dep't of Def.*, 709 F.2d 621, 622 (8th Cir. 1983).

Ms. Gambrell disclosed information that she learned through a conversation with Ms. Crowe, who had learned of the same through a telephone conversation with Plaintiff's husband. She did not obtain the information from a record maintained by the Treasury; the information was not even contained in a record prior to Plaintiff's husband's disclosure. Accordingly, because Ms. Gambrell learned of the Plaintiff's medical condition through a verbal communication and not from a record,

---

likely cause. *Olivares*, 882 F. Supp. at 1550 (finding that emotional trauma alone can suffice as an adverse effect). But because Plaintiff provides virtually no factual or descriptive details of adverse effects, one can only infer what she may have suffered. Furthermore, any success with respect to this single element cannot save Plaintiff's claim without proof that the Act was actually violated.

neither of her disclosures – verbal or email – violated the Act.

Even if, *arguendo*, the email that Ms. Gambrell sent were construed as a record under the Act because it included Plaintiff's name and medical information, *see Williams*, 104 F.3d at 674 (finding that a letter was a record where it contained the individual's name and information about him, including medical history); *Rivera v. Potter*, 400 F. Supp. 2d 404, 409 (D.P.R. 2005) (finding that printouts of emails between supervisors containing information about employee's prospective fraud investigation were records because they identified employee by name and included information about the investigation), its disclosure would still fail to violate the Act because the email was not contained within a system of records. The Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(4)-(5); *see Rivera*, 400 F. Supp. 2d at 409 (finding that an email was not contained in a system of records absent evidence indicating that emails were kept in a filing system and were retrievable under the employee's name or that those emails were included in those employee's personnel files); *cf. Williams*, 104 F.3d at 676 (finding that *actual retrieval* of the record from a system of records may not be necessary to find that a disclosure violates the Act, but only where there is evidence that a system of records already exists of which the record is a part). The pleadings do not indicate – nor does the Plaintiff allege – that the Treasury maintained the email in a filing system or that it would be possible to retrieve the email by searching under Plaintiff's name or identifier. As noted above, the email did not even exist prior to Ms. Gambrell drafting and sending it. Therefore, even if the email were construed as a record, its disclosure did not violate the Act as it was not contained within a system of records.

Finally, even if Plaintiff were able to show that the disclosures violated the Act, she would not have a cause of action because she has failed to show that the disclosures were committed willfully or intentionally. *See* 5 U.S.C. § 552a(g)(4); *Doe v. Chao*, 435 F.3d 492, 500 (4th Cir. 2006). Plaintiff alleges that Ms. Gambrell had generally created a hostile working environment for her and that the disclosures were at least in part retaliation for an EEOC claim that Plaintiff filed against Ms. Gambrell at some point prior to the disclosures. Plaintiff further calls into question Ms. Gambrell's professed concern for her well-being. Ms. Gambrell, on the other hand, claims that the disclosures were made to inform CDFI employees of the reason for the alleged disruption caused by Ms. Crowe when she learned of the Plaintiff's miscarriage, which was necessary to enable affected staff members to perform their professional duties. Ms. Gambrell also sent Plaintiff an email expressing her condolences and letting her know that she could take as much leave as she needed.

Despite Plaintiff's beliefs with respect to Ms. Gambrell's motive, the disclosures do not rise to the level of a willful or intentional violation of the Act. To do so, the disclosures must be grossly negligent, committed with flagrant disregard of the Plaintiff's rights, and without grounds for believing the disclosures to be lawful. *Scrimgeour v. Internal Revenue*, 149 F.3d 318, 326 (4th Cir. 1998). "Gross negligence is an extreme departure from the standard of ordinary care," *Doe v. Gen. Servs. Admin.*, 544 F. Supp. 530, 541 (D. Md. 1982), and given that Defendant learned of the information through the voluntary communication of Plaintiff's husband at Plaintiff's direction, such a departure is not present. Although Ms. Gambrell did not receive Plaintiff's express permission to inform other CDFI staff of Plaintiff's condition, there is no indication that Plaintiff or Plaintiff's husband explicitly asked that the information not be communicated further. Ms. Gambrell's

9

disclosure may show negligence or a lack of tact and sensitivity; however, evidence of negligence is not sufficient to show that the agency acted willfully or intentionally. *See Olivares v. Nat'l Aeronautics*, 882 F. Supp. 1545, 1550 (D. Md. 1995). Therefore, Plaintiff's claim of action under the Privacy Act fails with respect to the second element as well.[4]

Finally, even if Plaintiff were successful in demonstrating a cause of action under the Privacy Act, to recover the monetary relief that she seeks, she must also show actual damages. *See* 5 U.S.C. § 552a(g)(4)(A); *Doe v. Chao*, 435 F.3d at 500. And this she has failed to do because she has offered no proof or corroboration of her claim with "evidence of physical symptoms, medical treatment, [or] loss of income." *Doe v. Chao*, 540 U.S. 614, 617 (2004).

**B. Family and Medical Leave Act Claim**

Plaintiff also claims that the disclosures violated her rights under the Family and Medical Leave Act ("FMLA"). Under the FMLA, an employee may claim either that the employer interfered

---

[4] Defendant argues in the alternative that even if a record within a system of records was disclosed, the disclosure was not prohibited because it falls within the "need to know" exception under the Act, which provides that a record may be disclosed "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). There is some discrepancy between Plaintiff's and Defendant's retelling of the facts regarding the nature of the disruption caused by Ms. Crowe after she received the call from Plaintiff's husband, and who within the office was actually aware of it. Nevertheless, the Defendant has failed to describe how knowledge of such information would affect the ability of any of these employees to perform their specific duties. *See Pippinger v. Rubin*, 129 F.3d 519, 530 (10th Cir. 1997) (employees needed to know plaintiff's name only because their job entailed conducting an investigation about plaintiff). Knowing the reason behind the alleged disruption and the Plaintiff's absence might have reduced distraction among the Plaintiff's subordinates or anyone else who witnessed Ms. Crowe's alleged "hysterical crying;" however, it is difficult to see how knowledge with such specificity was necessary. In fact, learning of the Plaintiff's miscarriage may have even caused greater distraction among CDFI staff. Accordingly, the Court will not rest its finding on the "need to know" exception, but judgment is still proper for Defendant because Plaintiff has failed to demonstrate that Defendant intentionally or wilfully disclosed information in violation of the Act.

10

with her substantive rights, which includes discouraging an employee from taking leave, 29 C.F.R. § 825.220(b), or that the employer retaliated against her for exercising those rights.[5] 29 U.S.C. § 2615(a)(1)-(2) (2006); *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006). Defendants clearly did not interfere with Plaintiff's right to take leave as evinced by the email exchanges between Ms. Gambrell and Plaintiff and the absence of any allegation by Plaintiff that Defendants tried to stop her from taking leave.

Plaintiff also fails to show that the Defendants retaliated against her for exercising her rights under the FMLA. To establish a *prima facie* case of retaliation under the FMLA, the Plaintiff must show that (1) she engaged in a protected activity, (2) the employer took an adverse employment action against the employee, and (3) there is a causal connection between the protected activity and

---

[5]An accompanying regulation of the FMLA regarding disclosure provides that "[r]ecords and documents relating to . . . medical histories of employees . . . created for the purposes of FMLA, shall be maintained as confidential medical records in separate files/records from the usual personnel files, and if the ADA, as amended, is also applicable, such records shall be maintained in conformance with ADA confidentiality requirements. 29 C.F.R. § 825.500(g). It is not settled whether this provision gives rise to a private right of action for disclosure, *see Cash v. Smith*, 231 F.3d 1301, 1306-07 (11th Cir. 2000); *Johnson v. Moundsvista, Inc.*, 2002 WL 2007833, at *7 (D. Minn. Aug. 28, 2002), but even if it did, Plaintiff does not have a claim. While the email that Ms. Gambrell sent is related to the Plaintiff's medical history, it was not created for the purposes of documenting or maintaining a file on Plaintiff's FMLA leave. The email was drafted and sent to inform CDFI employees of the reason for the Plaintiff's absence. Furthermore, the ADA confidentiality requirements explicitly referred to in 29 C.F.R. § 825.500(g) apply to information obtained as a result of an employer-requested medical examination or other employer inquiries. 42 U.S.C. § 12112(d); 29 C.F.R. § 1630.14(c)(1). No employer-initiated examination or inquiry took place in this case.

Plaintiff disclosed the reason for her leave voluntarily and not at the request or demand of her employer and ADA confidentiality provisions do not protect an employee's voluntary disclosure of a medical condition. *Cash*, 231 F.3d at 1307; *Ballard v. Healthsouth Corp.*, 147 F. Supp. 2d 529, 534-35 (N.D. Tex. 2001). "If an employee requests time off and discloses to the employer a medical condition that necessitates the time off, there is nothing in the ADA that requires . . . that the employer keep that information secret from other employees." *Ross v. Advance Am. Cash Advance Ctr.*, 605 F. Supp. 2d 1025, 1033 (E.D. Ark. 2009).

the adverse action. *Jordan v. Radiology Imaging Assocs.*, 577 F. Supp. 2d 771, 786 (D. Md. 2008).

With respect to the first element of the claim, Plaintiff engaged in two activities that qualify as protected: taking FMLA leave and filing an EEOC claim prior to Ms. Gambrell's disclosure. *See Yashenko*, 446 F.3d at 551 (taking FMLA leave is a protected activity under the statute); *Felix v. Sun Microsystems,Inc.*, No. Civ. JFM-03-1304, 2004 WL 911303, at *17 (D. Md. Apr. 12, 2004) (participating in any legal processes under the FMLA and opposing any practice made unlawful by the FMLA are protected activities under the statute). If Plaintiff contends that her protected activity was the taking of leave (assuming that the disclosures were sufficiently adverse, thus satisfying the second element) her claim fails at the outset because there can be no causal link to an adverse employment action that occurs before the protected activity. *Felix*, 2004 WL 911303, at *18.

Plaintiff took her FMLA leave following Ms. Gambrell's disclosure. Plaintiff did email Ms. Gambrell on the morning of April 16 to notify her that she would not be coming into work due to a doctor's appointment and this was prior to Ms. Gambrell's disclosure later that afternoon; indeed, the disclosure only occurred because of Plaintiff's absence and miscarriage. However, Plaintiff did not email Ms. Gambrell indicating that she might be taking extended leave until April 20. The "Certification of Health Care Provider" FMLA form was not signed and dated until May 5 and Plaintiff did not provide Ms. Gambrell with a copy of the form until June 3. Therefore, without a possible causal connection between the taking of leave and the disclosures, Plaintiff's claim fails.

With respect to Plaintiff's second potential protected activity – the filing of the EEOC charge against Ms. Gambrell prior to the disclosures – Plaintiff does not specify the contents of the claim nor the date on which it was filed. Ms. Gambrell made the disclosures on April 16 and the EEOC was contacted about them in May. Plaintiff's "current EEO case" was then amended to reflect what

12

had happened and an EEO officer contacted Ms. Gambrell concerning her conduct. Plaintiff brings this current retaliation claim under the FMLA, but the FMLA only protects an employee from retaliation for an activity protected under the FMLA itself. *Felix*, 2004 WL 911303, at *18 (citing *Watkins v. Henderson*, 2001 WL 219807, at *19 (S.D. Ind. Mar. 5, 2001).

Thus, the Plaintiff has failed to establish a *prima facie* case of retaliation under the FMLA due to the lack of any causal connection and, as such, Defendant's motion for summary judgment will be granted on this claim.

**C. Improper Disclosure Claim**

Plaintiff's complaint also enumerates "improper disclosure of medical condition and sick leave" as a separate cause of action using language that appears to be taken from the Treasury's Privacy Act Program slides. [Compl. Ex. A]. Plaintiff does not describe in her complaint any disclosures in addition to the ones at issue under the Privacy Act and FMLA claims nor any additional source of law under which the separate cause of action would arise. Furthermore, in her response to Defendant's motion, Plaintiff omits this issue from the list of items in dispute and does not otherwise address it. Therefore, Plaintiff's claim of "improper disclosure of medical condition and sick leave" will be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**D. Invasion of Privacy Claim**

Lastly, Plaintiff has asserted a state law claim for invasion of privacy under the Federal Tort Claims Act ("FTCA"). As an initial matter, pursuant to the FTCA, the United States is the proper

defendant in this claim. 28 U.S.C. § 2679(b). The FTCA further provides that if the plaintiff names an individual government employee as a defendant, the Attorney General may certify that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose" and accordingly the claim against the individual "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." *Id.* § 2679(d)(1). In this claim, as with the previous three, the Plaintiff named Ms. Gambrell as Defendant. [Compl. 1]. The Attorney General has certified that Ms. Gambrell was acting within the course and scope of her employment at all times relevant to Plaintiff's claims. [Def.'s Mot. to Dismiss Ex. 6]. Accordingly, this Court will dismiss Ms. Gambrell and substitute the United States as a Defendant as to this claim.

Even with this substitution, Plaintiff's invasion of privacy claim fails because she has not exhausted her administrative remedies. The FTCA requires that a claimant present the underlying tort claim to the appropriate federal agency and that it be denied before filing a civil action pursuant to that same claim against the Government. *See* 28 U.S.C. § 2675(a) (1996). "A claim is properly presented when the government receives a completed SF 95 or other written notification of the incident and a claim for money damages in a sum certain." Claims Under the Federal Tort Claims Act, 31 C.F.R. § 3.2(a) (1970), *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000). If the administrative claim is not first presented to the agency, the district court must dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Henderson v. U.S.*, 785 F.2d 121, 123 (4th Cir. 1986).

Plaintiff does refer to an EEOC charge that she filed against Ms. Gambrell prior to the disclosures regarding an unspecified and presumably completely unrelated event. This EEOC

14

charge was subsequently amended to include details about the disclosures, but the Plaintiff does not indicate that this amendment included a claim for money damages in a sum certain as required to render it properly presented under the FTCA.  There is also no record of Plaintiff filing a claim for damage, injury, or death (SF 95) or any other record of a claim for money damages with regard to her invasion of privacy claim.  The Plaintiff, therefore, has not exhausted her administrative remedies as required under 28 U.S.C. § 2675(a), and so her invasion of privacy claim must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## IV. Conclusion

Accordingly, for the forgoing reasons, the Court will, by separate order, grant the Defendant's Motion To Dismiss, and direct the entry of judgment for costs in favor of all Defendants.


Date: July 15, 2009                              /s/
                                        ROGER W. TITUS
                                        UNITED STATES DISTRICT JUDGE